IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| ANEL HUBBARD, | ) |
|  | ) |
| Petitioner, | ) |
|  | ) |
| v. | ) C.A. No. 18-1407 (MN) |
|  | ) |
| ROBERT MAY, Warden, and ATTORNEY GENERAL OF THE STATE OF DELAWARE, | ) |
|  | ) |
| Respondents.[1] | ) |

## MEMORANDUM OPINION

Anel Hubbard. *Pro se* Petitioner.

Matthew C. Bloom, Deputy Attorney General, Delaware Department of Justice, Wilmington, DE. Attorney for Respondents.

September 27, 2021
Wilmington, Delaware

---

[1] Warden Robert May replaced former Warden Dana Metzger, an original party to the case. *See* Fed. R. Civ. P. 25(d).

**NOREIKA, U.S. DISTRICT JUDGE:**

Pending before the Court is a Petition and two Amended Petitions for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition") filed by Petitioner Anel Hubbard ("Petitioner"). (D.I. 1; D.I. 17; D.I. 24).  The State filed an Answer in opposition, to which Petitioner filed a Reply.  (D.I. 27; D.I. 31).  For the reasons discussed, the Court will deny the Petition.

**I.      BACKGROUND**

On June 25, 2009, at approximately 12:30 a.m., John Walker ("Walker"), and Waldemar Ortiz ("Ortiz") left the Ortiz residence located on 5th Street in Wilmington, Delaware, and walked toward the driveway where Walker's motorcycle was parked. As Walker was getting on his motorcycle and preparing to go home, two black males approached. One of the men ordered Walker to get off the motorcycle, while the other man pointed a handgun at both Walker and Ortiz. The gunman ordered them to lay face down on the ground.

The unarmed man was unable to start the motorcycle. Walker got up from the ground, explained how to start the motorcycle, and helped put it in gear.  As the unarmed man began to drive away, the gunman started shooting at Ortiz and Walker. Walker was shot once in the jaw, twice in the thigh, and once on the calf. Ortiz ran away, uninjured, toward his house. The gunman then fled. Ortiz returned and drove Walker to St. Francis Hospital.

When Wilmington Police arrived at the shooting scene, they observed surveillance cameras at the adjacent Latin American Community Center. The officers were able to view the surveillance videotape. It depicted Walker and Ortiz being approached by two black males, one appearing to have a gun in his hand. One of the men got onto the motorcycle while Walker was face down on the ground. The videotape does not show the shots actually being fired. It does show the armed man running away and Walker crawling toward the garage.

After viewing the surveillance videotape, Wilmington Police went to St. Francis Hospital. There, an officer interviewed Ortiz who gave a description of the perpetrators and the motorcycle. Following Ortiz's interview, the police observed the stolen motorcycle at a Wawa on North DuPont Highway in New Castle, Delaware. The black male sitting on the motorcycle, identified as Isaiah Taylor

("Taylor"), matched one of Ortiz's descriptions and was taken into custody.

Ortiz was interviewed later on the morning of June 25, 2009, by Detective Peter Leccia ("Detective Leccia") at the Wilmington Police Department. A photographic lineup was created and shown to Ortiz who positively identified Taylor as the man who rode away on the motorcycle. Ortiz was unable to identify the gunman from a photographic lineup.

A Wilmington police officer also attempted to interview Walker on June 25, 2009. While he was unable to speak due to his injuries, he positively identified Taylor from a photographic lineup as the individual who stole the motorcycle. Walker was not able to make an identification of the gunman.

Following his apprehension, Taylor was interviewed at the Wilmington Police Department by Detective Leccia. Taylor admitted that he and another man, later identified as [Petitioner], stole the motorcycle from the victim. According to Taylor, [Petitioner] began firing shots at the victims as Taylor drove away.

Based on Taylor's statement, a search warrant was issued for the home where [Petitioner] was believed to reside. [Petitioner] was taken into custody as he was leaving the residence. A handgun was recovered from the ceiling tiles of the room in the residence that [Petitioner] occupied. The handgun was later examined by a forensic firearms examiner who was unable to conclusively establish that the five shell casings recovered from the scene were fired from the handgun. The forensic firearm examiner did, however, determine that a bullet found at the crime scene had been fired by the handgun.

[Petitioner] was brought to the Wilmington Police Department where he was interviewed by Detective Leccia at approximately 1:00 p.m. on the afternoon of June 25, 2009. Detective Leccia advised [Petitioner] of his *Miranda* rights. [Petitioner] stated that he understood those rights.

Instead of invoking his right to remain silent, [Petitioner] began to answer Detective Leccia's questions. Initially, [Petitioner] denied any involvement in the shooting and related a fictitious story about his whereabouts the previous night, also claiming to have been "drunk and high." As the interrogation progressed, however, [Petitioner] ultimately admitted his role in the shooting.

*Hubbard v. State*, 16 A.3d 912, 914-15 (Del. 2011).  In January 2010, a Delaware Superior Court jury found Petitioner guilty of attempted first degree murder, five counts of possession of a firearm during the commission of a felony ("PFDCF"), two counts of first degree robbery, one count of first degree carjacking, one count of first degree reckless endangering, and one count of second degree conspiracy.  Petitioner was also found guilty of possession of a deadly weapon by a person prohibited ("PDWBPP") at a simultaneous bench trial.  *See State v. Hubbard*, 2017 WL 480567, at *1 (Del. Super. Ct. Jan. 25, 2017).  On April 23, 2010, the Superior Court sentenced Petitioner as a habitual offender to twelve life sentences.  *See Hubbard*, 16 A.3d at 914.  Petitioner appealed, and the Delaware Supreme Court affirmed Petitioner's convictions and sentences on April 12, 2011.  *See Hubbard*, 16 A.3d at 920.

On October 17, 2011, Petitioner filed a *pro se* motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion").  (D.I. 28-1 at 9, Entry No. 60).  A month later, he filed a first amended first Rule 61 motion.  (D.I. 28-1 at 15, Entry No. 67).  The Superior Court appointed counsel to represent Petitioner, who filed a second amended first Rule 61 motion on September 30, 2015.  (D.I. 28-1 at 15, Entry No. 95).  Petitioner was appointed new counsel, who filed a third amended first Rule 61 motion ("first Rule 61 motion") in June 2015.  (D.I. 28-1 at 19, Entry No. 117; D.I. 28-8 at 187-225).  The Superior Court denied the first Rule 61 motion on January 25, 2017.  *See Hubbard*, 2017 WL 480567.  The Delaware Supreme Court affirmed that decision on January 23, 2018.  *See Hubbard v. State*, 179 A.3d 823 (Table), 2018 WL 526597 (Del. Jan. 23, 2018).  On March 22, 2018, Petitioner filed a *pro se* Rule 61 motion ("second Rule 61 motion").  (D.I. 28-1 at 21, Entry No. 133).  The Superior Court summarily denied the second Rule 61 motion in June 2018.  (D.I. 28-1 at 22, Entry No. 137; D.I. 28-13 at 17).  The Delaware Supreme Court affirmed the Superior Court's decision on September 4, 2018.  *See Hubbard v. State*,194 A.3d 372 (Table), 2018 WL 4212139 (Del. Sept. 4, 2018).

## II. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>   (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

4

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *see Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *See Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *See Lines,* 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750*; Harris v. Reed*, 489 U.S. 255, 260-64 (1989). Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51.

To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that the errors at his trial [] worked to his actual and substantial disadvantage, infecting

his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). If a petitioner attempts to excuse his default on the basis of ineffective assistance of counsel, he can satisfy the prejudice component of the "cause and prejudice" standard by meeting the prejudice standard needed to establish ineffective assistance of counsel under the test set out in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Holland v. Horn*, 519 F.3d 107, 120 (3d Cir. 2008).

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537-38 (2006); *see Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

C.   **Standard of Review**

When a state's highest court has adjudicated a federal habeas claim on the merits,[2] the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established

---

[2]   A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).

6

federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the state court proceeding.  28 U.S.C. § 2254(d)(1) & (2); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001).  The deferential standard of § 2254(d) applies even when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied.  *See Harrington v. Richter*, 562 U.S. 86, 98-101 (2011).  As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413.  The mere failure to cite Supreme Court precedent does not require a finding that the decision is contrary to clearly established federal law. *See Early v. Packer*, 537 U.S. 3, 8 (2002).  For instance, a decision may comport with clearly established federal law even if the decision does not demonstrate an awareness of relevant Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id*.  In turn, an "unreasonable application" of clearly established federal law occurs when a state court "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of a prisoner's case." *Williams*, 529 U.S. at 413; *see also White v. Woodall*, 572 U.S. 415, 426 (2014).

Finally, when performing an inquiry under § 2254(d), a federal court must presume that the state court's determinations of factual issues are correct.  *See* 28 U.S.C. § 2254(e)(1); *Appel*, 250 F.3d at 210.  This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C.

7

§ 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

### III. DISCUSSION

Petitioner's timely filed Petition and Amended Petitions assert four grounds for relief: (1) post-conviction counsel who represented Petitioner on the first Rule 61 motion provided ineffective assistance by failing to include in the first Rule 61 motion the allegation of ineffective assistance asserted in Claim Four of this proceeding; (2) trial counsel provided ineffective assistance by not objecting to the admission of the prior statement of his accomplice, Taylor, under 11 Del. Code § 3507 (D.I 24 at 7); (3) trial counsel provided ineffective assistance by not moving to suppress Taylor's identifications of Petitioner; and (4) trial counsel provided ineffective assistance by not moving to strike or excuse Juror No. 2.

### A. Claim One: Not Cognizable

In Claim One, Petitioner contends that post-conviction counsel provided ineffective assistance by not including in his first Rule 61 motion a claim that defense counsel was ineffective for not moving to strike or excuse Juror No. 2 (*i.e.*, Claim Four in this proceeding). There is no federal constitutional right to effective assistance of post-conviction counsel. *See Coleman*, 501 U.S. at 752. In fact, the AEDPA specifically provides that "the ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding under section 2254." 28 U.S.C. § 2254(i). Therefore, the Court will deny Petitioner's instant ineffective assistance of post-conviction counsel argument

because it does not assert an issue cognizable on federal habeas review.[3] *See, e.g., Jordan v. Sup't Somerset SCI*, 2017 WL 5564555, at *1 (3d Cir. Feb. 15, 2017) ("[C]laims alleging ineffective assistance of PCRA counsel are non-cognizable in federal habeas, 28 U.S.C. § 2254(i).").

### B. Claim Two: Procedurally Barred

In Claim Two, Petitioner contends that trial counsel provided ineffective assistance by failing to object to the admission of Taylor's prior statement under 11 Del. Code § 3507. Petitioner presented Claim Two in his first Rule 61 motion, which the Superior Court denied. Although Petitioner appealed the denial of the first Rule 61 motion, he did not include Claim Two in his appeal. Because Petitioner did not present Claim Two to the Delaware Supreme Court, the Claim is not exhausted.

At this juncture, any attempt by Petitioner to raise Claim Two in a new Rule 61 motion would be barred as untimely under Delaware Superior Court Criminal Rule 61(i)(1). *See Kostyshyn v. Metzger*, 2018 WL 1383237, at *7 (D. Del. Mar. 19, 2018). Although Rule 61(i)(1) provides for an exception to the one-year time limitation if the untimely Rule 61 motion "asserts a retroactively applicable right that is newly recognized after the judgment of conviction is final," no such argument is made here. Similarly, the exceptions to Rule 61(i)(1)'s time-bar contained in Rule 61(i)(5) and (d)(2) do not apply to Petitioner's case because he does not allege actual innocence, lack of jurisdiction, or that a new rule of constitutional law applies to the instant arguments. Given these circumstances, Claim Two is procedurally defaulted, and the Court cannot review its merits absent a showing of cause for the default and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the Claim is not reviewed.

---

[3] Even if the Court were to examine the issue of post-conviction counsel's alleged ineffectiveness, the argument lacks merit due to the Court's determination that the underlying ineffective assistance of counsel argument (*i.e.*, Claim Four) is meritless. *See infra* at Section III.D.

9

Citing *Martinez v. Ryan*, 566 U.S. 1, 16-17 (2012), Petitioner contends that his default of Claim Two should be excused because post-conviction counsel failed to include the Claim in his appeal of the first Rule 61 motion. This argument is unavailing. In *Martinez,* the Supreme Court held that inadequate assistance or the absence of counsel during an initial-review state collateral proceeding may in some circumstances establish cause for a petitioner's procedural default of a claim of ineffective assistance of trial counsel. *Id*. at 12, 16-17. The Third Circuit recently explained the application of *Martinez* in habeas cases:

> *Martinez* recognizes a narrow exception to the doctrine of procedural default: "Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." This exception is available to a petitioner who can show that: 1) his procedurally defaulted ineffective assistance of trial counsel claim has "some merit," and that 2) his state-post conviction counsel was "ineffective under the standards of *Strickland v. Washington*."

*Workman v. Sup't Albion SCI*, 915 F.3d 928, 937 (3d Cir. 2019). "To demonstrate that his claim has some merit, a petitioner must 'show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'" *Id*. at 938 (quoting *Miller-El*, 537 U.S. at 336). To demonstrate that post-conviction counsel's ineffectiveness caused the procedural default, a petitioner must show that post-conviction counsel's performance was deficient under the first prong of the *Strickland* standard, *i.e.* "that his state post-conviction counsel's performance fell below an objective standard of reasonableness." *Workman*, 915 F.3d at 941.

Here, *Martinez* does not apply to excuse Petitioner's default of Claim Two because the default did not occur at the initial-review collateral proceeding. Rather, the default occurred when the Claim was not raised on post-conviction appeal. As the Superior Court reviewed and denied

10

Claim Two on the merits, Petitioner's failure to exhaust the claims occurred at the post-conviction appeal level. Thus, his default is not excused under *Martinez*.[4]

Petitioner does not argue any other cause for his default of Claim Two. In the absence of cause, the Court will not address the issue of prejudice. Additionally, Petitioner has not satisfied the miscarriage of justice exception to the procedural default doctrine because he has not provided new reliable evidence of his actual innocence. Accordingly, the Court will deny Claim Two as procedurally barred from habeas review.

### C. Claim Three: Meritless

In Claim Three, Petitioner alleges that trial counsel provided ineffective assistance by not moving to suppress Taylor's in-court and out-of-court identifications. Petitioner presented this Claim in his Rule 61 proceeding and on post-conviction appeal and the Delaware state courts denied the Claim as meritless. Therefore, Claim Three only warrants relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland* and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

---

[4] Even if the *Martinez* rule should be liberally interpreted as applying to this situation and, particularly to a post-conviction attorney's failure to raise claims on post-conviction appeal, the Court would not excuse Petitioner's default because he has failed to demonstrate that Claim Two has "some merit."

11

proceeding would have been different." *Id.* at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* A petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). A court can choose to address the prejudice prong before the deficient performance prong, and reject an ineffective assistance of counsel claim solely on the ground that the defendant was not prejudiced. *See Strickland,* 466 U.S. at 698. Finally, although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

With respect to the first prong of the § 2254(d)(1) inquiry, a "state court decision is contrary to clearly established federal law if it applies a rule that contradicts the governing law set forth in Supreme Court precedent, or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from that reached by the Supreme Court." *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). In this case, the Superior Court's decision was not contrary to clearly established federal law because it correctly identified the *Strickland* standard applicable to Claim Three. *See Fahy v. Horn,* 516 F.3d 169, 196 (3d Cir.2008) (Pennsylvania Supreme Court's decision was not "contrary to" clearly established federal law because it appropriately relied on its own state court cases, which articulated the proper standard derived from Supreme Court precedent); *Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The Court must also determine if the Superior Court reasonably applied the *Strickland* standard to the facts of Petitioner's case. When analyzing the second prong, the Court must review the Delaware state court's decision with respect to Petitioner's ineffective assistance of counsel

12

claim through a "doubly deferential" lens.[5] *See Richter*, 562 U.S. at 105. Notably, when § 2254(d)(1) applies, "the question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*. When assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable." *Id*. And finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id*. at 101.

The Superior Court denied Claim Three as meritless after determining that trial counsel's decision was strategic and Petitioner was not prejudiced by trial counsel's failure to file a motion to suppress Taylor's identifications. In affirming the Superior Court's decision, the Delaware Supreme Court held that defense counsel's decision was tactical and not unreasonable. *See Hubbard*, 2018 WL 526597, at *3.

After reviewing the record, the Court concludes that the Delaware state courts did not unreasonably apply *Strickland* in denying Claim Three. In his Rule 61 affidavit, trial counsel explained that he did not think there was a good faith basis for filing a motion to suppress an identification made by a co-defendant, because Petitioner and Taylor knew each other. Trial

---

[5] As explained by the *Richter* Court,

> [t]he standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).

*Richter*, 562 U.S. at 105 (internal citations omitted).

13

counsel also described how Taylor had identified a different individual, Sean Hubbard, in his initial identification, and essentially thought it would be more beneficial to cross-examine Taylor on his previous misidentification. Specifically, trial counsel stated "[t]hat [the misidentification] seemed to me like a ripe area for cross-examination; as such, I did not see any advantage to moving to suppress the identifications." (D.I. 28-8 at 248). This tactical decision falls within the wide range of professionally reasonable conduct under *Strickland*.

Moreover, Petitioner has failed to demonstrate a reasonable probability that the outcome of his trial would have been different but for trial counsel's failure to file a motion to suppress Taylor's identifications of him. The fact that Taylor and Petitioner knew each other provided a reliability to Taylor's identifications and undermines any prejudice. Accordingly, the Court will deny Claim Three for failing to satisfy § 2254(d).

### D.   Claim Four: Meritless

In his final Claim, Petitioner contends that trial counsel provided ineffective assistance by not moving to strike or excuse Juror No. 2. Petitioner presented Claim Two in his second Rule 61 motion, which the Superior Court summarily dismissed under Rule 61(d)(2) because it was a second or subsequent Rule 61 motion. (D.I. 28-13 at 18). The Delaware Supreme Court affirmed that decision, stating that "the Superior Court did not err in concluding that the motion was procedurally barred and did not satisfy the pleading requirements of Superior Court Criminal Rule 61(d)(2)." *Hubbard*, 2018 WL 4212139, at *1.

Although the Delaware state courts expressly relied on Rule 61(d)(2) when dismissing Claim Four, the State contends that Claim Four is procedurally defaulted because Rule 61(i)(2) is an independent and adequate state procedural rule. (D.I. 27 at 9-10). The Court recognizes that the State's reference to Rule 61(i)(2) may be due to the fact that the current version of Rule 61(i)(2)

is interrelated with the current version of Rule 61(d)(2).  But the State's reference to Rule 61(i)(2) only makes sense when viewed in context with the history of Rule 61, as set forth below.

> On June 4, 2014, [. . .] Rule 61(i)(2)(i) was amended to provide that "[n]o second or subsequent motion is permitted under this Rule unless that second or subsequent motion satisfies the pleading requirements of subparagraphs (2)(i) or 2(ii) of subdivision (d) of this rule." Rule 61(d)(2) provides that a "second or subsequent motion under this rule shall be summarily dismissed, unless the movant was convicted *after a trial* and" the motion either pleads that new evidence exists of the movant's innocence in fact or that a new retroactive rule of constitutional law render the movant's conviction invalid.

*Kane v. State*, 135 A.3d 308, 308 (Del. 2016).  Prior to June 4, 2014, Rule 61(d)(2) concerned stays for Rule 61 proceedings, and Rule 61(i)(2) provided as follows:

> Repetitive motion.  Any ground for relief that was not asserted in a prior postconviction proceeding, as required by subdivision (b)(2) of this rule, is there after barred, unless consideration of the claim is warranted in the interest of justice.

Del. Super. Ct. Crim. R. 61(i)(2) (2013).  In turn, the pre-2014 version of Rule 61(b)(2) provided:

> Content of motion.  The motion shall specify all the grounds for relief which are available to the movant and of which the movant has or, by the exercise of reasonable diligence, should have knowledge, and shall set forth in summary form the facts supporting each of the grounds thus specified.

Del. Super. Ct. Crim. R. 61(b)(2) (2013).

      Returning to the State's argument, the State correctly asserts that the Court consistently viewed the pre-2014 version of Rule 61(i)(2) as an independent and adequate rule precluding federal habeas review absent a showing of cause and prejudice.  *See, e.g., Lawrie v. Snyder*, 9 F. Supp. 2d 428, 454 (D. Del. 1998).  Nevertheless, the Court has not yet addressed whether the post-2014 versions of Rule 61(i)(2) and Rule 61(d)(2), whether viewed together or separately, constitute independent and adequate procedural rules for the purposes of the procedural default doctrine.  Given the myriad issues related to determining if the amended versions of Rule 61(d)(2)

and Rule 61(i)(2) constitute independent and adequate state procedural rules for procedural default purposes, the Court concludes that the interests of justice are best served in this instance by addressing the merits of Claim Four. *See* 28 U.S.C. 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

The following summary provides relevant background information for understanding Petitioner's instant contention that trial counsel provided ineffective assistance by not moving to strike Juror No. 2.

> [Juror Number Two] knew one of the victims in this case. The juror and the victim socialized together occasionally at events where the victim performed as a DJ. The juror indicated that he had not seen the victim in a few years, he had no prior knowledge of the incident at issue in the case, and his prior acquaintance with the victim would not affect his judgment. The trial judge asked if [trial] counsel wanted to make an application to strike the juror. [Trial counsel], after a brief discuss with [Petitioner], indicated there was no application.

(D.I. 28-13 at 17-18).

A criminal defendant has the right to a fair trial by a panel of impartial, indifferent jurors. *See Irvin v. Dowd*, 366 U.S. 717 (1961). If a trial court becomes aware of possible juror bias, it must investigate the source of the alleged bias, "determine its impact on the juror, and decide whether it was prejudicial." *Remmer v. United States*, 347 U.S. 227, 230 (1954); *see Anderson v. Phelps*, 930 F. Supp. 2d 552, 565 (D. Del. 2013). If the allegation of juror bias arises before the verdict, the trial court has "wide discretion" to determine the appropriate procedure to assess it. *See Reed v. Carroll*, 2005 WL 2086745, at *7 (D. Del. Aug. 26, 2005). It is well-settled that "*voir dire* provides a means of discovering actual or implied bias,"[6] and the juror's responses are not

---

6     *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 143 (1994).

16

inherently suspect. *See Smith v. Phillips,* 455 U.S. 209, 217 n.7 (1982). If the jury bias claim "does not involve contact with a juror during a trial about a matter pending before the jury . . ., a new trial will only be warranted if the defendant proves that he was actually prejudiced by the improper contact." *Reed*, 2005 WL 2086745, at *6. Thus, in such cases, the defendant "has the burden of proving actual juror bias." *Anderson*, 930 F. Supp. 2d at 565.

Here, Petitioner cannot meet his burden of proving actual bias and, therefore, cannot show prejudice under *Strickland*. During the testimony of the second witness, Juror No. 2 realized he knew the shooting victim, Walker, and alerted the court. (D.I. 28-3 at 147, 169). Years earlier, Walker frequented a video store at which Juror No. 2 worked. (D.I. 28-3 at 147). They occasionally socialized: Juror No. 2 met Walker at events that Walker DJed, and they talked during breaks in his sets. (D.I. 28-3 at 147). But by the time of the trial, Juror No. 2 had not seen or talked to Walker for about five years. (D.I. 28-3 at 147). Juror No. 2 stated that he had no prior knowledge of the incident on trial and that his past contact with Walker was "not going to affect [his] judgment." (*Id.*). The Superior Court did not find it necessary to *sua sponte* excuse Juror No. 2 for cause, as it had the discretion to do, *see Schwan v. State*, 65 A.3d 582, 590 (Del. 2013); *Dumire v. State*, 278 A.2d 836, 837-38 (Del. 1971), but nevertheless gave Petitioner's trial counsel the opportunity to make such an application. (D.I. 28-3 at 169). Trial counsel conferred with Petitioner, and after obtaining Petitioner's input on the matter, decided not to make any application. (*Id.*). Consequently, Juror No. 2 remained on the panel. (*Id.*).

Notably, merely knowing the victim "does not, by itself, constitute the requisite showing of bias required for a dismissal for cause." *United States v. Smith*, 319 F. Supp. 2d 527, 530 n.12 (E.D. Pa. 2004). The Superior Court investigated the source of potential juror bias in this case by questioning Juror No. 2 separately from the rest of the jury and in the presence of counsel. (D.I. 28-3 at 147-48). Juror No. 2 had a casual acquaintance with Walker, had not seen him for years, and

17

stated that he could remain fair and impartial in rendering a verdict. (*Id.*). The Superior Court implicitly agreed by not exercising its discretion to excuse him from the panel.

The Superior Court's *voir dire* was an appropriate procedure for evaluating the possible juror bias. *See e.g.*, *Reed*, 2005 WL 2086745, at *7; *see also United States v. Console*, 13 F.3d 641, 667 (3d Cir. 1993) (noting that the Third Circuit has deferred to trial court's evaluations of juror misconduct when the trial court has conducted individualized *voir dire* examinations). Moreover, in this proceeding, Petitioner has not provide any reason to believe that Juror No. 2's assurances should be viewed with suspicion or were unreliable, nor has he demonstrated any actual juror bias. Given these circumstances, trial counsel's failure to pursue a meritless motion to strike Juror No. 2 was not deficient and did not prejudice Petitioner. Thus, the Court will deny Claim Four as meritless.

## V.  CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). If a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.*

The Court has concluded that the instant Petition fails to warrant federal habeas relief, and is persuaded that reasonable jurists would not find this conclusion to be debatable. Therefore, the Court will not issue a certificate of appealability.

## VI. CONCLUSION

For the reasons stated, the instant Petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied without an evidentiary hearing or the issuance of a certificate of appealability. An appropriate Order shall issue.